UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANGEL D. LEBRON, JR.,

                                    Plaintiff,


        v.

SGT MICHAEL F. MRZYGLOD; C.O.
RYDER S. BADER; C.O. WILLIAM J.
WILLIAMS; C.O. BARRY A. STEVENS;
C.O. RYAN A. KELLY; HEARING
OFFICER B. LEVINE; ALBERT PRACK;
BRIAN FISCHER, Commissioner of NYS
Dept. of NYS DOCS; SUPT. W. LEE, of
Green Haven Facility; CLIFFORD K.
GUNSELT, individually and in their official
capacities,

                          Defendants.

No. 14-CV-10290 (KMK)

OPINION & ORDER

Appearances:

Angel D. Lebron, Jr.
Coxsackie, NY
*Pro Se Plaintiff*

Neil Shevlin, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Angel D. Lebron, Jr. ("Plaintiff"), an inmate proceeding pro se, brought this suit pursuant

to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights when he was

assaulted without cause and punished for his alleged misbehavior.  (*See* Am. Compl. (Dkt. No.

47).)  Although most of Defendants have filed their answer, Defendants Lee, Prack, and Fischer

(collectively, "Moving Defendants") have moved to dismiss Plaintiff's Amended Complaint on

the grounds that Plaintiff has failed to allege personal involvement by Moving Defendants in the alleged constitutional violations and that Moving Defendants are entitled to qualified immunity. (*See* Mem. of Law in Supp. of Mot. To Dismiss Am. Compl. by Defs. Lee, Prack, & Fischer ("Defs.' Mem.") (Dkt. No. 55).)  For the reasons below, the Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's Amended Complaint and are presumed true for purposes of the Motion.

On December 26, 2013, while incarcerated at Green Haven Correctional Facility, Plaintiff was called out with 50 or 60 other inmates.  (*See* Am. Compl. ¶ 1.)  After Plaintiff passed through the gate area, a correction officer instructed Plaintiff to sit in the metal detector chair.  (*See id.* ¶ 2.)  Plaintiff complied, and no contraband was found.  (*See id.*)  Plaintiff was then told to approach the wall for a pat-frisk and to remove all objects out of his pockets.  (*See id.* ¶ 3.)  Plaintiff complied and was then told to place his hands on the wall, spread his legs open, and stretch his body outward until he was on his toes.  (*See id.* ¶¶ 4–5.)  Plaintiff was patted down, but the correction officer did not find anything.  (*See id.* ¶ 6.)  After the pat-frisk was completed, the officer swiped Plaintiff's legs from underneath him and Plaintiff fell to the floor.  (*See id.* ¶ 7.)  While on the floor, Plaintiff began to feel numerous punches and kicks that, he believes, were caused by more than one officer.  (*See id.* ¶¶ 8–9.)  Plaintiff alleges that the officers assaulting him were Defendants Bader, Gunselt, Williams, and Stevens.  (*See id.* ¶ 11.)  Plaintiff specifically notes that Stevens left his assigned area without permission to join in the assault.  (*See id.* ¶ 13.)  During the assault, Bader and Gunselt held Plaintiff's body down and

pulled his head up so that Defendant Mrzyglod, another correction officer, could punch Plaintiff in the eye until Plaintiff could no longer open it.  (*See id.* ¶¶ 14–15.)

Sometime after this incident, although Plaintiff does not specify how long, Plaintiff was escorted to the Special Housing Unit ("SHU") by Bader, Stevens, Gunselt, and Mrzyglod.  (*See id.* ¶ 16.)  On the way, Plaintiff swung his leg out, and Stevens claimed that Plaintiff struck him in the groin.  (*See id.* ¶ 17.)  Plaintiff was again put down on the ground forcibly, this time by Defendants Kelly, Gunselt, and Bader.  (*See id.* ¶ 18.)  Plaintiff was then processed for his entry into the SHU and was seen by two nurses, but was not given any medication.  (*See id.* ¶ 19.)  Plaintiff was put in a cell without any medical attention for several hours before being taken to the medical department.  (*See id.* ¶ 20.)  There, he was seen by a nurse, but he did not receive any medication or treatment.  (*See id.*)  Plaintiff was put on a tele-med interview with a doctor from Erie County Medical Center and was taken to Putnam Hospital Center to have his injuries evaluated.  (*See id.* ¶ 21.)  As a result of these incidents, Plaintiff was placed in the SHU for 14 months, was denied recreational and educational opportunities, and subsequently was moved to a facility much farther away from his family.  (*See id.* ¶¶ 26–27.)

Plaintiff believes that Mrzyglod planned the initial assault on December 26 in retaliation for an earlier confrontation between Plaintiff and Mrzyglod wherein Plaintiff refused to say "please" when asking for permission to use the restroom.  (*See id.* ¶¶ 30–36.)  Plaintiff alleges that after this confrontation, Mrzyglod told Plaintiff that he was going to "get" him.  (*See id.* ¶ 29.)  Plaintiff further alleges that the five officers who assaulted him lied about the incident, falsified the incident report, and testified untruthfully at Plaintiff's disciplinary hearing.  (*See id.* ¶ 40.)  Plaintiff points out that no alarm was raised during the altercation, a fact he finds suspicious because the officers alleged that he had a weapon.  (*See id.* ¶ 41.)

3

Plaintiff names Defendant Levine as a defendant because, as the hearing officer at Plaintiff's disciplinary hearing, he failed to fully investigate the incident and denied Plaintiff's requests to call various witnesses.  (*See id.* ¶¶ 46–47.)  Plaintiff posits that had Levine conducted a thorough investigation, the outcome of his hearing may have been different.  (*See id.* ¶ 51.) Plaintiff also names Defendant Lee, the superintendent of Green Haven, as a defendant because Lee allegedly overlooked the unusual features of the incident report.  (*See id.* ¶ 52.)  Plaintiff also points out that two weeks prior to the incident, he sent Lee a grievance expressing fear that he would be assaulted because of the threat Mrzyglod made against him.  (*See id.* ¶ 53.)  Plaintiff names Defendant Prack because he heard the appeal from the disciplinary hearing and failed to reverse the decision.  (*See id.* ¶ 54.)  Plaintiff alleges that Prack failed to fully investigate the matter and that had Prack carefully read everything, he would have realized that the incident report was fabricated.  (*See id.* ¶¶ 54–55.)  Finally, Plaintiff names Defendant Fischer, the former Commissioner of the New York State Department of Correctional Services, because "he is responsible for the safety of all the inmates" and he was aware that inmates were being victimized by correction officers.  (*See id.* ¶ 58.)

B.  Procedural History

Plaintiff filed his initial Complaint on December 31, 2014.  (*See* Compl. (Dkt. No. 1).) On December 2, 2015, Plaintiff was granted leave to file an amended Complaint, (*see* Order (Dkt. No. 46)), and Plaintiff filed his Amended Complaint on January 15, 2016, (*see* Dkt. No. 47).  On February 25, 2016, the nonmoving Defendants filed their Answer.  (*See* Dkt. No. 50.) On February 26, 2016, Moving Defendants were granted leave to file their Motion To Dismiss. (*See* Memo Endorsement (Dkt. No. 53).)  Moving Defendants filed the Motion and supporting papers on March 17, 2016.  (*See* Defs.' First Mot. To Dismiss Am. Compl. (Dkt. No. 54); Defs.'

Mem.)  Plaintiff filed his opposition on March 31, 2016.  (*See* Pl.'s Opp'n to First Mot. To Dismiss Am. Compl. (Dkt. No. 56).)  On April 18, 2016, Moving Defendants advised the Court that they did not intend to file a reply brief.  (*See* Letter from Neil Shevlin, Esq., to Court (Apr. 18, 2016) (Dkt. No. 57).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P.

8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-

technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to

the complaint or incorporated in the complaint by reference, and to matters of which judicial

notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317

(S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint]

liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of

Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).  However, "the liberal

treatment afforded to pro se litigants does not exempt a pro se party from compliance with

relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

(S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517

F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves

regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

### B.  Analysis

Moving Defendants raise two arguments: first, that the Amended Complaint fails to allege their personal involvement in the alleged constitutional violations, and second, that they are entitled to qualified immunity.  (*See* Defs.' Mem. 5–12.)  Because the question of qualified immunity is related, in this case, to the adequacy of the allegations, the Court will address the two issues concomitantly.

#### 1.  Applicable Law

##### a.  Categories of Personal Involvement

Moving Defendants argue that Plaintiff has failed to allege their personal involvement in the alleged constitutional violations, pointing out that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (Defs.' Mem. 5 (quoting *Farrel v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).)  Indeed, it is well established that respondeat superior is not a basis for liability under § 1983.  *See Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999); *see also Carrillos v. Incorporated Village of Hempstead*, 87 F. Supp. 3d 357, 382 (E.D.N.Y. 2015); *Jamison v. Fischer*, No. 11-CV-4697, 2012 WL 4767173, at *3 (S.D.N.Y. Sept. 27, 2012).  Instead, a plaintiff seeking to hold a supervisory defendant liable pursuant to § 1983 must allege personal involvement by the defendant, a requirement that may be satisfied by alleging that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference

to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  After the Second Circuit set forth these categories in *Colon*, however, the Supreme Court decided *Iqbal*, where it reaffirmed that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution."  556 U.S. at 676.  The Supreme Court went on to reject the plaintiff's argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," because this conception was "inconsistent with [the plaintiff's] accurate stipulation that [defendants] may not be held accountable for the misdeeds of their agents."  *Id.* at 677.

Since *Iqbal*, courts in the Second Circuit have been divided as to whether the five categories announced in *Colon* may still be used as bases for liability under § 1983.  *Compare, e.g.*, *Hollins v. City of New York*, No. 10-CV-1650, 2014 WL 836950, at *13 (S.D.N.Y. Mar. 3, 2014) (holding that only the first and part of the third categories in *Colon* survive *Iqbal*), *and Bellamy v. Mount Vernon Hosp.*, No. 07-CV-1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) (same), *aff'd*, 387 F. App'x 55 (2d Cir. 2010), *with Marom v. City of New York*, No. 15-CV-2107, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) ("The holding in *Iqbal* does not stand for the proposition that a supervisor can never be found personally liable for a constitutional deprivation on a showing that he was 'grossly negligent' or 'deliberately indifferent.'"), *and Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) ("Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply."), *and Delgado*

8

*v. Bezio*, No. 09-CV-6899, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011) (holding that if "the claim does not require a showing of discriminatory intent, the *Colon* analysis should still apply, insofar as it is consistent with the particular constitutional provision alleged to have been violated" (internal quotation marks omitted)).  Some courts have simply concluded that, in the absence of Second Circuit precedent suggesting otherwise, they will continue to apply the *Colon* test.  *See, e.g.*, *Doe v. New York*, 97 F. Supp. 3d 5, 12 (E.D.N.Y. 2015); *Johnson v. Fischer*, No. 12-CV-210, 2015 WL 670429, at *7 n.6 (N.D.N.Y. Feb. 17, 2015).  On balance, "[t]he majority of the district courts . . . have held that, absent any contrary directive from the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent."  *El-Hanafi v. United States*, No. 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015) (alteration and internal quotation marks omitted).  The Second Circuit, though recognizing the dispute, has declined to weigh in on the question as of yet.  *See Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) (noting that "*Iqbal* has, of course, engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*," but adding that  "the fate of *Colon* is not properly before us").

The Court agrees with those cases holding that *Colon* still controls with respect to claims that do not require a showing of discriminatory intent.  In *Iqbal*, the Supreme Court started by noting the long line of cases holding that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  556 U.S. at 676 (italics omitted).  The Supreme Court then reaffirmed the long-settled principle that "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose."  *Id.*  In doing so, the Supreme Court rejected the plaintiff's

theory that a supervisor may be held liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees," reiterating that in *Bivens* and § 1983 suits, "masters do not answer for the torts of their servants." *Id.* at 677 (internal quotation marks omitted).

The Supreme Court, however, said nothing about liability for defendants who failed to adequately supervise their subordinates, nor did the Court say anything about what is required to establish personal involvement under *Bivens* or § 1983, the question addressed by *Colon*. The Supreme Court, in fact, cited with approval a 19th century Supreme Court case holding that "a federal official's liability 'will only result from his own neglect in not properly superintending the discharge' of his subordinates' duties." *Id.* at 676 (quoting *Dunlop v. Munroe*, 11 U.S. 242, 269 (7 Cranch) (1812)). The issue addressed by the Court, instead, was whether discriminatory intent by a subordinate could be imputed to a supervisor—the Supreme Court concluded that it could not—and thus the holding in *Colon* remains undisturbed. To the extent other courts have suggested that *Iqbal*, while not overruling *Colon*, is inconsistent with *Colon*, the Supreme Court limited its holding to those claims alleging "invidious discrimination in contravention of the First and Fifth Amendments." *Id.* But even in that context, the Supreme Court did not hold that a supervisor could not be held liable for, as in *Colon*, failing to correct a constitutional violation presented through a direct appeal, discharging her supervisory duties with gross negligence, or acting with deliberate indifference in failing to act on information that unconstitutional conduct was occurring. *See Colon*, 58 F.3d at 873–74. This Court would strain itself attempting to read into *Iqbal* a repudiation of the unremarkable holding in *Colon* that personal involvement may be proven in ways other than direct participation. The most natural reading, recognized by the majority of courts in the Second Circuit, is that *Iqbal*'s limitation on supervisory liability applies

only to claims for discrimination under the First or Fifth Amendments.  *See Marom*, 2016 WL 916424, at *15 ("The holding in *Iqbal* does not stand for the proposition that a supervisor can never be found personally liable for a constitutional deprivation on a showing that he was 'grossly negligent' or 'deliberately indifferent.'  It only requires that a supervisor's action— whether direct or through 'his or her superintendent responsibilities'—must *itself* violate the terms of the constitutional provision at issue.").  As there is no indication Plaintiff intends to raise a claim of unconstitutional discrimination, the Court will examine the sufficiency of Plaintiff's pleadings under the five categories in *Colon*.

### b.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  "[Qualified] immunity protect[s] government's ability to perform its traditional functions . . . by helping to avoid unwarranted timidity in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits."  *Filarsky v. Delia*, 132 S. Ct. 1657, 1665 (2012) (second alteration in original) (internal quotation marks omitted).  Qualified immunity shields a defendant from standing trial or facing other burdens of litigation "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (internal quotation marks omitted).  Judgment in favor of a municipal defendant may be granted on the "basis of a qualified immunity defense

premised on an assertion of objective reasonableness [if] the defendant show[s] that no reasonable jury, viewing the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (second alteration in original) (internal quotation marks omitted).

The Supreme Court has held that when evaluating an asserted qualified immunity defense, a court may begin by examining whether a reasonable law enforcement officer in the defendant's position would have believed his or her conduct would violate the asserted constitutional right. *See Pearson*, 555 U.S. at 236 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001), and explaining that judges are no longer required to begin by deciding whether a constitutional right was violated but are instead "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first"). The Supreme Court has further instructed that "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right.  In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (second alteration in original) (citation and internal quotation marks omitted).  Furthermore, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Id.* at 2094 (citation and internal quotation marks omitted).  Otherwise stated, to determine whether a right is clearly established, courts must determine "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and

(3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

### 2.  Sufficiency of Pleadings

The Court will examine the claims against each Moving Defendant in turn.

#### a.  Lee

Construing Plaintiff's Amend Complaint liberally, Plaintiff alleges two possible causes of action against Lee: (1) that Lee violated his constitutional rights because he did not conduct a thorough review of the paperwork and grievance filed by Plaintiff in relation to the disciplinary hearing that ultimately led to Plaintiff's confinement in SHU, and (2) that Lee failed to protect Plaintiff despite being warned ahead of time that Plaintiff was in danger.  (*See* Am. Compl. ¶¶ 52–53.)

With respect to Lee's review of the disciplinary and grievance papers, Plaintiff does not allege any unconstitutional conduct on the part of Lee.  Plaintiff does not make at all clear, for example, why he believes Lee even saw this paperwork, or what Lee's role was, if any, in Plaintiff's disciplinary hearing.  Moreover, it is well settled that mere receipt of a grievance or misbehavior report does not establish liability under § 1983.  *See, e.g.*, *Whitenack v. Armor Med.*, No. 13-CV-2071, 2014 WL 5502300, at *6 (E.D.N.Y. Oct. 30, 2014) ("Since [the] plaintiff has pled no facts, beyond [the sheriff's] presumed receipt of grievances and his position atop the [correctional center] . . . , [the plaintiff] has failed to plausibly plead [the sheriff's] personal involvement in any infringement of [the plaintiff's] constitutional rights." (alterations and internal quotation marks omitted)); *Richard v. Fischer*, 38 F. Supp. 3d 340, 355 (W.D.N.Y. 2014) ("To bring a § 1983 claim against a prison official, a plaintiff must allege that individual's personal involvement; it is not enough to simply assert that the defendant is a link in the prison

chain of command." (internal quotation marks omitted)).  Lee was neither the hearing officer nor the appeal officer.  Indeed, aside from being the superintendent of Green Haven, Lee's role in the alleged deprivation of Plaintiff's rights is entirely unclear.  There is no allegation, for instance, that Lee promulgated unconstitutional policies, was involved in Plaintiff's disciplinary appeal, supervised his subordinates with gross negligence, or acted with deliberate indifference to unconstitutional conduct.  *See Colon*, 58 F.3d at 873–74.  Absent some allegation explaining Lee's direct, indirect, or supervisory involvement in the assault on Plaintiff or his disciplinary hearing, Plaintiff cannot state a claim against Lee.  Accordingly, Plaintiff's claim against Lee for failing to adequately review the disciplinary and grievance papers is dismissed.

With respect to Lee's alleged failure to adequately respond to Plaintiff's grievance, filed two weeks before the assault, the facts alleged are sufficient to state a claim.  An inmate may state a claim under the Eighth Amendment against a prison official under the theory that prison officials failed to protect him or her.  *See Farmer v. Brennan*, 511 U.S. 825, 845 (1994).  A plaintiff seeking to make such a claim must allege both an objective and subjective element: that "he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison official had a "sufficiently culpable state of mind, to wit, [was] deliberately indifferent to the harmful conditions."  *Randle v. Alexander*, 960 F. Supp. 2d 457, 473 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 362 (S.D.N.Y. 2013) (same); *Warren v. Goord*, 476 F. Supp. 2d 407, 410 (S.D.N.Y. 2007) (same).  Deliberate indifference exists "when an official 'has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.'"  *Parris*, 947 F. Supp. 2d at 363 (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).

14

For the objective element, Plaintiff has adequately alleged that he was incarcerated under conditions posing a substantial risk of serious harm.  Mrzyglod made a direct threat toward Plaintiff, one that he allegedly made good on just two weeks later.  And while the extent of Plaintiff's injuries is unclear, "the objective prong can be satisfied even where no serious physical injury results."  *Randle*, 960 F. Supp. 2d at 473.  The focus of the Court's inquiry here is thus "not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'"  *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997), *aff'd sub nom. Heisler v. Rockland County*, 164 F.3d 618 (2d Cir. 1998); *Blake v. Kelly*, No. 12-CV-7245, 2014 WL 4230889, at *5 (S.D.N.Y. Aug. 26, 2014) (same).  Moreover, when "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.  This is true whether or not significant injury is evident."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted).  There is thus no question that Plaintiff, who claims he was beaten by correction officers without provocation, has sufficiently alleged the objective component of his Eighth Amendment claim against Lee.

Plaintiff has also carried his burden at this stage for the subjective component.  To establish deliberate indifference, a plaintiff must allege "that correction[] officers knew of and disregarded a particular risk to his safety."  *Parris*, 947 F. Supp. 2d at 363; *see also Shell v. Brun*, 585 F. Supp. 2d 465, 469 (W.D.N.Y. 2008) ("[I]n failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." (internal quotation marks omitted)).  Moving Defendants argue that Plaintiff's allegations here are insufficient because "an inmate's communications about generalized safety concerns do not create knowledge of a substantial risk of serious harm."  (Defs.' Mem. 7 (internal quotation marks omitted).)  This may be true, but

Plaintiff did not communicate a generalized safety concern to Lee, rather, Plaintiff has alleged that he sent a grievance to Lee two weeks prior to the incident making him aware of the threat made by Mrzyglod.  (*See* Am. Compl. ¶ 53.)  Discovery may very well show that Lee never saw the grievance, had good reason to doubt its veracity, or took reasonable steps to protect Lee from danger, or examination of the grievance may reveal that it did not, in fact, reference the specific threat from Mrzyglod.  At this stage, however, Plaintiff has alleged facts that, if proven true, would establish that Lee acted with deliberate indifference in failing to act on a specific threat made against Plaintiff by Mrzyglod.  Moving Defendants' additional claim that Plaintiff failed to allege that Lee read the grievance or had notice of its contents is similarly unavailing; Plaintiff alleges that Lee "was aware of the threat" because Plaintiff sent the grievance to him.  (*Id.*) Demanding more specific allegations, such as that Lee reviewed the grievance or that Lee regularly reviews grievances sent to him, would require Plaintiff to allege facts clearly not within his personal knowledge.  Again, these issues must be resolved in discovery or at trial.

For the same reasons discussed above, the facts alleged do not establish that Lee is entitled to qualified immunity.  The Eighth Amendment right to be free from an arbitrary failure to protect is well established, *see Farmer*, 511 U.S. at 845, and any reasonable official would know that failing to respond to a specific threat of violence against an inmate meets that standard, *see Smith v. Mackay*, No. 03-CV-738, 2009 WL 1150411, at *8 (W.D.N.Y. Apr. 27, 2009) ("[R]easonable prison officials would understand that the malicious and sadistic use of force and the failure to protect a prisoner from such a use of force . . . constitutes a violation of the Eighth Amendment."); *Tatum v. City of New York*, No. 06-CV-4290, 2009 WL 124881, at *11 (S.D.N.Y. Jan. 20, 2009) (declining to apply qualified immunity because the claim relating to the defendant's failure to protect "involve[d] clearly established [c]onstitutional rights" and

there were no facts suggesting that "it was 'objectively reasonable' for [the defendant] to believe that her conduct did not violate those rights"). Again, however, discovery may show that the facts are different from how Plaintiff has represented them in his Amended Complaint and that Lee is entitled to qualified immunity. Lee may thus renew his Motion with respect to qualified immunity if and when such facts come to light. Until then, Lee's Motion is denied with respect to the failure to protect claim.

### b. Prack

Moving Defendants argue that Prack, the appeal officer who reviewed and dismissed Plaintiff's appeal from his disciplinary hearing, cannot be held liable because he had no personal involvement in the alleged violations of Plaintiff's constitutional rights. Specifically, Moving Defendants argue that an appeal officer can be held liable only where the alleged constitutional violation was ongoing at the time of the appeal such that it could have been cured by the appeal. (*See* Defs.' Mem. 8–9.) Read liberally, Plaintiff's Amended Complaint alleges that he was deprived of procedural due process because Levine prevented Plaintiff from calling witnesses and that Prack is liable for having failed to correct that error, and other alleged deficiencies, on the appeal. (*See* Am. Compl. ¶¶ 46–47, 54–56.)

There is no question that when an inmate is subject to "special confinement that imposes an atypical hardship," procedural due process entitles that inmate to "a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). There is no apparent dispute here, and the Court thus does not decide, that Plaintiff's commitment to the SHU for 14 months suffices as an atypical hardship entitling him to the protections of procedural due process. *See id.* (assuming, without deciding, that a six-month confinement in the SHU was an atypical hardship). Less clear is whether an

appeal officer may be held liable for failing to reverse the outcome of an allegedly unconstitutional disciplinary hearing.  The Second Circuit has twice suggested that an appeal officer may be liable for failing to correct procedural due process errors in the hearing below. *See Wright v. Smith*, 21 F.3d 496, 502 (2d Cir. 1994) (holding that the plaintiff sufficiently alleged that he "was denied notice of a hearing and its outcome, an impartial hearing officer, the right to be present, and the right to be informed of and respond to the evidence against him," and declining to dismiss the case as against the superintendent of the prison because he was a "supervisory official who, after learning of the violation through a report or appeal, failed to remedy the wrong" (alterations and internal quotation marks omitted)); *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (holding that the plaintiff "sufficiently alleged that [the superintendent] was personally involved in depriving him of his due process right to call witnesses" because the plaintiff "expressly claimed that [the superintendent] affirmed his conviction on administrative appeal").  Nevertheless, courts examining those Second Circuit cases have determined that the circumstances were factually unique enough to leave open the question of whether an appeal officer may be held liable merely for the failure to reverse the outcome of an allegedly unconstitutional hearing.  *See Jamison*, 2012 WL 4767173, at *5 n.3 ("*Williams* is not dispositive, however, because the Second Circuit recognized that, during the relevant period at that particularly [sic] facility, inmates were regularly denied the right to call witnesses, and the defendant could be alleged to have been involved in a 'custom or policy' of allowing unconstitutional practices."); *Thomas v. Calero*, 824 F. Supp. 2d 488, 508 (S.D.N.Y. 2011) ("The Circuit's finding in *Williams*, however, also noted that the defendant, who was the [s]uperintendent of [the facility], could easily be alleged to be involved in a 'custom or policy' of allowing unconstitutional practices, 'given the frequency with which [the facility] has violated

inmates' rights to call witnesses during [the defendant's] tenure.'" (quoting *Williams*, 781 F.2d at 324)).

Although courts are in general agreement that an appeal officer's failure to correct an ongoing violation may be a ground for imposing liability, *see, e.g.*, *Ortiz v. Russo*, No. 13-CV-5317, 2015 WL 1427247, at *13 (S.D.N.Y. Mar. 27, 2015); *Thomas*, 824 F. Supp. 2d at 509, courts are divided on whether an appeal officer's failure to correct a procedural due process error at the hearing below fits this standard, *compare, e.g.*, *Delgado*, 2011 WL 1842294, at *9 ("[The plaintiff's] [c]omplaint and supporting documents allege sufficiently the personal involvement of [the defendants], as they are alleged to have had the power, and to have refused, to vacate a penalty they knew had been imposed in violation of [the] [p]laintiff's due process rights, thus violating [the] [p]laintiff's constitutional rights by knowingly continuing a deprivation of liberty without due process of law."), *and Thomas*, 824 F. Supp. 2d at 510 ("At the time of [the] plaintiff's appeal . . . , he was confined in SHU and, following his appeal, his confinement in SHU continued, resulting in a total of 291 days of confinement.  This is sufficient to support a finding that the . . . appeal was meant to address an ongoing violation that could have been remedied [on appeal]." (citation omitted)), *with Ortiz*, 2015 WL 1427247, at *14 ("Since [the defendant's] involvement was distinct from the constitutional violations [the] [p]laintiff has alleged against the other [d]efendants, he cannot be held liable under § 1983 for violations that occurred prior to his review and were not ongoing."), *and Jamison*, 2012 WL 4767173, at *4 ("[The defendant] could not have corrected the alleged denial of [the] [p]laintiff's ability to call witnesses at the hearing because—by definition—the hearing ended before [the defendant] became involved through [the] [p]laintiff's appeal.").

The Court is not wholly persuaded by those courts holding that an appeal officer may not be held liable for failure to correct a procedural due process error below. Courts dismissing claims against appeal officers for failing to correct procedural violations do so on the belief that the Second Circuit intended to limit the second category in *Colon* to "cases involving continuing unconstitutional prison conditions that the warden may be proven or assumed to know about, and a refusal by the warden to correct those conditions." *Thompson v. New York*, No. 99-CV-9875, 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001); *see also Koehl v. Bernstein*, No. 10-CV-3808, 2011 WL 2436817, at *10 (S.D.N.Y. June 17, 2011) ("The reference in case law to an official who fails to remedy a violation logically applies only to ongoing, and therefore correctable, constitutional violations—not to a specific event that is later subject to formal review by designated officials once the constitutional violation has already concluded."), *adopted by* 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011). This inference is not derived from any language in *Colon*, which did not even involve an allegation under this category. These courts, instead, reason that "were it otherwise, virtually every prison inmate who sues for constitutional torts by prison guards could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies and invariably the plaintiff's grievance will have been passed upon by the Superintendent." *Koehl*, 2011 WL 2436817, at *10 (alteration omitted). But this observation, which addresses only grievances filed by an inmate and not disciplinary proceedings initiated by the correction institution, proves too much. It is axiomatic, after all, that a hearing officer may be sued for violating an inmate's procedural due process rights. *See, e.g.*, *Ortiz v. McBride*, 380 F.3d 649, 654–55 (2d Cir. 2004). There is no principled reason why the appeal officer, who has access to the same information as the hearing officer and is empowered to correct errors of the

hearing officer, should not be held to the same standards of liability as the hearing officer, or why it should offend justice to so hold.

But, as this line of cases demonstrates, the law in this area is unsettled, and thus it cannot be said that "every reasonable official," *Reichle*, 132 S. Ct. at 2093 (internal quotation marks omitted), would have known that failure to correct a procedural due process error on appeal violates an inmate's constitutional rights. Accordingly, because the Court is permitted to consider the applicability of qualified immunity before determining whether Plaintiff has stated a claim, *see Pearson*, 555 U.S. at 236, and because application of qualified immunity is appropriate at the motion-to-dismiss stage where "the defense is based on facts appearing on the face of the complaint," *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004), the Court holds that although an inmate's right to procedural due process is well established, not every reasonable official would understand that Prack's alleged conduct here violated Plaintiff's rights, and thus qualified immunity attaches.

The Court recognizes that some cases have denied a defendant's motion to dismiss on the grounds asserted here and subsequently declined to afford qualified immunity at the pleading stage because "[t]he legal authority that an inmate is entitled to call witnesses was settled long before [the] plaintiff's administrative appeal," and "[w]hether there were circumstances that justified a reasonable belief by [the defendant] that the denial to [the] plaintiff of two witnesses at his disciplinary hearing satisfied due process cannot be decided on the basis of the pleadings." *Thomas*, 824 F. Supp. 2d at 511; *see also Delgado*, 2011 WL 1842294, at *10 ("The right to call witnesses at such a hearing has also been clearly established by both courts, subject to certain safeguards, which are also clearly established."). The Court does not doubt that the right of an inmate to call witnesses at a disciplinary hearing was well established at the time of Plaintiff's

21

appeal, nor can it be said with certainty at this stage whether a reasonable official would understand that Levine's conduct violated Plaintiff's rights.  But it is insufficient to show that Prack should have reasonably known that Levine's conduct violated Plaintiff's rights; Plaintiff must allege facts showing that Prack should have reasonably known that *his* conduct violated Plaintiff's rights.  Taking everything in Plaintiff's Amended Complaint as true, and considering the sharp divide between courts as to whether an appeal officer violates an inmate's rights by failing to correct a procedural due process error, the Court is not persuaded that a reasonable appeal officer would have understood that Prack's conduct violated the Constitution.  *See Pearson*, 555 U.S. at 231 ("The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting))); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."); *Moore v. Andreno*, 505 F.3d 203, 215–16 (2d Cir. 2007) (affording the defendants qualified immunity "because the law was unclear" at the time of the alleged constitutional violation).  Moving Defendants' Motion is therefore granted with respect to Prack.

### c.  Fischer

Finally, Moving Defendants argue that the claim against Fischer must be dismissed because Plaintiff fails to allege that Fischer was personally involved in any violation of Plaintiff's constitutional rights.  Plaintiff, for his part, alleges that Fischer "is responsible for the safety of all the inmates, that are suppose[d] to be treated fairly, and to make sure the officers he hires, don't abuse the code of the uniform."  (Am. Compl. ¶ 58.)  Plaintiff further alleges that

Fischer was aware "that inmates are being pulverized by [the] hands of his fellow officers," and that Fischer is "suppose[d] to review all incidents." (*Id.* ¶¶ 58–59.)

Plaintiff's Amended Complaint, liberally construed, appears to be raising claims under three of the *Colon* categories: (1) "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom," (2) "the defendant was grossly negligent in supervising subordinates who committed the wrongful acts," and (3) "the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon*, 58 F.3d at 873. But the generalized allegations in Plaintiff's Amended Complaint fall far short of adequately alleging any wrongful conduct on the part of Fischer. *See Brooks v. Prack*, 77 F. Supp. 3d 301, 313 (W.D.N.Y. 2014) ("[T]he conclusory assertion that a supervisory official was personally involved in the deprivation of constitutional rights, without supporting factual allegations, is not sufficient to state a claim under § 1983." (internal quotation marks omitted)); *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012) ("[T]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983." (internal quotation marks omitted)); *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 361–62 (S.D.N.Y. 2010) ("[The plaintiff] alleges even less personal involvement by Fischer than he does by [the correction officer], and therefore has not properly stated a claim against Fischer."). Of particular relevance is *Parris*, where in dismissing claims against Fischer and other supervisory defendants, the court held:

> The plaintiff alleges that the defendants allowed inadequate security practices to exist at Green Haven. Specifically, the plaintiff alleges that some of the security posts in the six block yard were unmanned at the time of the assault. However, the [c]omplaint fails to allege facts in support of the conclusion that only manning some of the security posts in the yard was grossly negligent. Furthermore, the [c]omplaint does not allege that the security posts were routinely left unmanned,

23

> only that they were unmanned at the time of the incident. . . .  The [c]omplaint . . .
> fails to allege that any of the defendants had 'direct responsibility' for ensuring
> those posts were manned.  The [c]omplaint further fails to allege that there was 'a
> history of prior episodes' requiring the defendants to remedy the alleged problem
> of unmanned posts.  The [c]omplaint's conclusory statements are insufficient to
> demonstrate the personal involvement of any of the supervisory defendants named
> in this case.

947 F. Supp. 2d at 365 (citations omitted).  Plaintiff's allegations do not even allege this level of

particularity, merely claiming that Fischer is responsible for the conduct of his officers and is

supposed to review disciplinary infractions.  (*See* Am. Compl. ¶¶ 58–59.)  Moreover, as Moving

Defendants point out, (*see* Defs.' Mem. 9), and as the Court is permitted to take judicial notice

of, *see Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166

(S.D.N.Y. 2015) ("Courts routinely take judicial notice of . . . governmental records [on official

government websites]."), Fischer retired as commissioner of the New York Department of

Corrections and Community Supervision at the end of April 2013, *see* Capitol Confidential,

*DOCCS Chief Brian Fischer Is Retiring*, Department of Corrections and Community Supervision

(Mar. 5, 2013, 7:48 AM), http://www.doccs.ny.gov/NewsRoom/external_news/2013-03-

05_Fischer_Retirement_Atu.pdf.  Plaintiff's claim arose in December 2013, long after Fischer

left his post as commissioner.  There is thus no doubt that Plaintiff's claim against Fischer is

without merit.

### 3.  Leave to Amend

A complaint should be dismissed without prejudice if the pleading, "'liberally read,'

suggests that the plaintiff has a claim that []he has inadequately or inartfully pleaded and that

[]he should therefore be given a chance to reframe."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d

Cir. 2000) (alterations and citation omitted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d

794, 795 (2d Cir. 1999)).  If a complaint, however, has substantive problems and "[a] better

pleading will not cure [them]," "[s]uch a futile request to replead should be denied." *Id.* (citing *Hunt v. All. N. Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)).  Even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).

The Court is not persuaded that any amendment could cure Plaintiff's claims against Prack or Fischer.  Prack is entitled to qualified immunity, and no amendment to the pleadings will change the uncertainty in the law that entitles him to that immunity.  With respect to Fischer, even were Plaintiff to include specific allegations of gross negligence in overseeing the Department of Corrections and Community Supervision, or promulgation of policies and procedures that deprived Plaintiff of his rights, Fischer left office several months before Plaintiff's claims arose, and thus there would be no basis to impose liability on him.

For Lee, though the Court questions whether there is any colorable claim against him pertaining to the disciplinary charges levied against Plaintiff, Plaintiff will nonetheless be permitted to amend his Complaint to sufficiently plead allegations showing that Lee's review of Plaintiff's grievance paperwork and disciplinary proceedings violated his constitutional rights. The Second Amended Complaint must include specific allegations showing Lee's personal involvement in the disciplinary process and in the deprivation of constitutional rights.  Plaintiff is advised, however, that he is not required to file a Second Amended Complaint, and that if he chooses not to do so, his claims against the nonmoving Defendants will go forward, as will his claim against Lee with respect to his alleged failure to protect.

## III. Conclusion

For the foregoing reasons, the Motion is granted in part and denied in part. The claims against Prack and Fischer are dismissed with prejudice. The claim related to Lee's review of Plaintiff's grievances and disciplinary charges is dismissed without prejudice. Should Plaintiff choose to amend his Complaint, he must do so within 30 days of the date of this Order. Any Answer to the Second Amended Complaint is due 30 days thereafter. If Plaintiff chooses not to amend his Complaint, Lee's Answer is due within 60 days of the date of this Order. The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 54.)

SO ORDERED.

DATED:     January 23, 2017
             White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

26